# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL J. FLOYD** *et al.*, | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MERCK & CO., INC.,** | : | **No. 18-3912** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                          *April 2*, 2020

Robert Rosanova and Michael Floyd applied for instrument technician ("IT") positions with Merck & Co., Inc. in 2017. Both were 59 years old. Neither was hired. The plaintiffs claim that they were qualified for the IT position but Merck discriminated against them on the basis of their age. Merck responds that they were not hired solely because each failed to meet the objective educational requirements for the job. Merck moves for summary judgment.

For the reasons that follow, the motion for summary judgment is denied.

### BACKGROUND

Global healthcare company Merck employs ITs, who are mechanics responsible for testing, calibrating, troubleshooting, maintaining, and repairing a wide range of equipment. Merck was routinely hiring for IT positions in 2017 and recruited two candidates, Robert Rosanova and Michael Floyd.

### I.    Merck's Recruitment of Mr. Rosanova

Mr. Rosanova applied for an IT position at Merck in May 2017 but later withdrew from consideration.[1]  At the time, Mr. Rosanova was 59 years old. Merck remained interested in Mr.

---

[1]        Mr. Rosanova withdrew his application due to his own hesitations related to Merck's pension plan.

1

Rosanova and followed up with him in August of that year to see if he was still interested in the IT position. Mr. Rosanova stated he would like to move forward with the application process, and Merck began preparing internally to interview him.

Prior to scheduling an interview, Merck's Senior Talent Acquisition Advisor Alysia Schurr forwarded Mr. Rosanova's resume to Merck's Associate Director Sarah Cossel and asked if Merck could proceed with an interview. Ms. Cossel responded that Mr. Rosanova's experience looked good but that she needed more information about his education background. Ms. Schurr informed Ms. Cossel that Mr. Rosanova had completed the "ISA Training Program at the Refinery," documentation of which she had requested and for which Mr. Rosanova was searching. Opp'n to Mot. at Ex. 27. A few hours later, Ms. Schurr electronically sent Ms. Cossel copies of documentation that Mr. Rosanova had provided, including his National Center for Construction Education & Research ("NCCER") Score Report, NCCER Official Assessment Transcript, NCCER certification, NCCER letter confirming completion of the Craft Skills Assessment Program, and a list of his completed training activities. An hour later, Ms. Schurr contacted administrative assistant Judith Jenkins to inform her that Merck could "move forward with scheduling [Mr. Rosanova] as well as [Ms. Cossel] just cleared his credentials." Opp'n to Mot. at Ex. 26. Ms. Schurr spoke to Ms. Cossel sometime between her first email asking if they could proceed with an interview and her final email stating that Ms. Cossel had cleared the credentials, although it is unclear if this happened before or after Ms. Schurr sent Ms. Cossel the various documentation Mr. Rosanova had provided.

Merck interviewed Mr. Rosanova on September 11, 2017. Merck also interviewed Thomas Wade (age 53) and Tan Nguyen (age 51) the same day. It is undisputed that Mr. Rosanova's interview was excellent, and the interview team recommended that he should be hired. The next

day, Ms. Schurr sent an email to "Anita"[2] at Merck asking her to process an external offer for Mr. Rosanova as soon as possible. Ms. Schurr also contacted Bruce Tomey, the supervisor of ITs assigned to the relief shift, to let him know she had routed the IT offer for Mr. Rosanova and that Mr. Tomey should see it in his queue to approve within 24 hours.

The next week, on September 18, 2017, Ms. Schurr forwarded Mr. Rosanova's NCCER documentation to hiring manager Tina Miller, who had been part of Mr. Rosanova's interview team. Ms. Miller forwarded the documentation to Theodore Buczacki, who had also been part of the interview team, and asked him to look at Mr. Rosanova's certifications and speak with Evan Schone, a hiring decision-maker, about Mr. Rosanova's certifications' equivalency to Merck's requirements. She noted that there were some questions about the educational requirements, but the NCCER appeared to satisfy them. Mr. Buczacki responded by asking for Mr. Rosanova's resume and the current IT job description, which Ms. Schurr provided.

Minutes before Ms. Schurr provided this information, she also reached out to Mr. Rosanova. In her email, she told Mr. Rosanova that the team was impressed with his background and experience, informed him that Merck was currently reviewing the credentials he had submitted, and asked him to let her know if he had any additional documentation. Later that day, Mr. Rosanova responded to Ms. Schurr that he was having difficulty getting the data concerning in-house training he had had over the years, but he sent along what he was able to locate. He ended the communication by saying he would understand if Merck needed to proceed without him.

The next day, Ms. Schurr responded by asking Mr. Rosanova to send any additional training or curriculum information at his earliest convenience. An hour later, Mr. Rosanova sent all of his in-house training verifications dating back to 2009 to Ms. Schurr, who forwarded them

---

[2] This employee's role and last name are both unknown.

to Ms. Cossel. Later that day, Ms. Schurr called Mr. Rosanova to inform him that he did not meet the IT position's educational requirement and was, for that reason, rejected.

## II.    Mr. Floyd's Application to Merck

While Merck was recruiting Mr. Rosanova, he recommended that one of his co-workers, Mr. Floyd, apply for a Merck IT position as well. Mr. Floyd applied for a Merck IT position in August 2017. Like Mr. Rosanova, Mr. Floyd was 59 years old.

Shortly after Mr. Floyd applied, Ms. Schurr asked him to provide his educational credentials. Mr. Floyd provided her with his degree in digital and microprocessor technology from Lyons Technical Institute, his NCCER Official Assessment Transcript, his NCCER certification, and his training logs, which overlapped significantly with those submitted by Mr. Rosanova. Merck determined that Mr. Floyd did not meet the educational requirement and informed him on November 1, 2017 that he was rejected for the IT position. Merck never interviewed Mr. Floyd.

## III.    Merck's IT Hires

Since Mr. Rosanova and Mr. Floyd applied for IT positions with Merck in 2017, the company has hired approximately 20 ITs. Two of those ITs were Mr. Wade (age 53) and Mr. Nguyen (age 51), the individuals interviewed the same day as Mr. Rosanova. The rest of the ITs hired in 2017 were at varying ages between 55 and 34. In 2018, the ITs hired were between the ages 56 at 26, and in 2019, the ITs hired were ages 51, 44, 40, and 26.

LEGAL STANDARD

A court can properly grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of*

*Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

Messrs. Rosanova and Floyd claim that despite being qualified for the IT position, Merck rejected them because of their age. In support of its motion, Merck argues that neither gentleman can establish that he met the IT position's educational requirement, and that this lack of qualification is why Merck never hired them.

The motion for summary judgment is denied because disputes of material fact exist regarding whether the plaintiffs were qualified for the IT position and whether Merck's reason for not hiring them was pretext for discrimination based on their age.

## I. The Plaintiffs' *Prima Facie* Case

Plaintiffs bringing an age discrimination claim under the Age Discrimination in Employment Act of 1967 and the Pennsylvania Human Relations Act "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 577 U.S. 167, 177–78 (2009). Absent direct evidence of age discrimination (which, in the great majority of cases, is decidedly hard to come by), plaintiffs' claims are evaluated using the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

"To make out a prima facie case of age discrimination in a case of failure to hire, plaintiff must show 1) that he belongs to the protected class, 2) that he applied for and was qualified for the job, 3) that despite his qualifications he was rejected, and 4) that the employer either ultimately

---

[3] First, the plaintiff must establish a *prima facie* case of age discrimination. *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). Finally, if the defendant articulates a nondiscriminatory basis for the negative hiring decision, the burden shifts back to the plaintiff to show that "the employer's proffered justification for the adverse action is pretextual." *Id.*

filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications." *Fowle v. C&C Cola, a Div. of ITT-Cont'l Baking Co.*, 868 F.2d 59, 61 (3d Cir. 1989) (citations omitted).

## A. Whether Merck Knew the Plaintiffs' Ages

Although the four elements of a plaintiff's *prima facie* case do not explicitly call for a showing that the employer had knowledge of his membership in a protected class, courts require such evidence to prove a *prima facie* case of discrimination. *See Harris v. Dow Chem. Co.*, 586 F. App'x 843, 846 (3d Cir. 2014) ("[A]n adverse employment action does not in isolation raise such an inference [of discriminatory action]; rather, the inference may be raised only if the relevant decision-maker has knowledge of the plaintiff's status as a protected class member.") (citations omitted). This is because "the *McDonnell Douglas* elements would not rationally create [an inference of intentional discrimination] if . . . there is no showing by direct or indirect evidence that the decision-maker knew" of the plaintiff's membership in a protected class. *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) (citations omitted).

Merck claims that it is entitled to summary judgment because there is no evidence in the record that anyone at Merck knew or considered the plaintiffs' ages in making the relevant hiring decisions. In support of this argument, Merck emphasizes that both plaintiffs admit that there is no evidence beyond their own beliefs that anyone at Merck knew or considered their age. Mr. Rosanova testified at his deposition as follows:

> Q.    Who is it at Merck that you think discriminated against you on the basis of your age, do you know?
>        . . .
> A.    Sarah [Cossel née] Wilson.
>        . . .
> Q.    Tell me why you believe Sarah Wilson discriminated against you on the basis of your age.

7

A. I—when I was refused, I got a text from Jim Walsh one day, and he didn't say it was because of my age. He just said I met the person who refused you, you know, the position. But that was my opinion.

   . . .

Q. Do you have—other than the text message from Mr. Walsh stating something to the effect I just met the person who refused you, do you have any facts to support that Sarah Wilson considered your age in making the decision not to extend you an offer of employment at Merck?

A. No.

Q. Okay. And, again, just so I'm clear, in the communication you received by text from Mr. Walsh, did he ever state that it was his belief that Sarah Wilson refused to provide an offer of employment to you at Merck because of your age?

A. No.

Q. Okay. So other than the single text message from Mr. Walsh that you no longer have, that's stated I just met the person that refused you, do you have any other information that would support that Sarah Wilson considered your age in making the decision not to offer you employment?

A. No.

Q. Okay. Is there anyone else at Merck that you believe discriminated against you on the basis of your age?

A. No.

Rosanova Dep. 173:22–176:16.

Mr. Floyd also testified on the topic at his deposition:

Q. So this whole concept of that you wouldn't be with the company long enough for the company to make an investment in you, has anyone ever said that to you?

A. No. I never spoke to anyone there.

Q. Okay. So that's just something that you have thought of; is that right?

A. It's my opinion. Yes.

   . . .

Q. No one ever said anything to you that would provide facts to support that belief; isn't that right?

   . . .

A. No. Nobody ever said anything to me.

Q. Okay. So you don't have any evidence that anyone at Merck made a decision not to hire you because they didn't want to invest in you because of your age?

A. Never spoke to anybody there, so I can't say they did or didn't.

Floyd Dep. 203:17–204:18.

The plaintiffs respond by arguing that direct evidence of discrimination is rare and that Merck decision-makers would have easily been able to estimate their ages based on their resumes alone. They point out that, for example, at her deposition, Ms. Cossel was able to estimate Mr. Floyd's age upon counsel's request as being approximately 60 or 61 based solely on Mr. Floyd's resume. The plaintiffs argue that this is enough to establish knowledge, or at least a factual dispute as to knowledge, for the purposes of their duty to lay out a *prima facie* case.

The Court must view the evidence presented and draw all reasonable inferences in the light most favorable to the non-moving party. Here, even a brief examination of the plaintiffs' resumes could easily inform a reader—especially a reader whose job it is to evaluate job candidates—of their approximate ages. For example, Mr. Rosanova's resume shows that he has been in the workforce since 1977. Likewise, Mr. Floyd's resume shows that he entered the workforce in 1976. The reasonable inference drawn from this information being provided to Merck is that Merck had knowledge of the plaintiffs' approximate ages.[4] Because all reasonable inferences must be made in favor of the plaintiffs at this stage, the Court finds that the plaintiffs have managed to meet their burden to show that Merck was at least aware of their status as protected class members. Therefore, the Court turns to the four elements of the plaintiffs' *prima facie* case.

**B. Whether the Plaintiffs Were Qualified**

No one disputes that Mr. Floyd and Mr. Rosanova were older than age 40 when they applied for IT positions at Merck. There is a dispute, however, over the second element, namely,

---

[4]     Furthermore, counsel for Merck conceded at oral argument on the motion for summary judgment that an inference could be made that Merck was aware of the plaintiffs' ages based on their resumes. *See* Jan. 6, 2020 Oral Arg. Tr. 8:4–9 ("Q. [A]re there inferences that can be fairly drawn from the information that we know Merck had which we know are the resumes? So looking at the resumes, can an inference fairly be drawn? A. The answer to that question, Your Honor, which is a good one, is yes.").

whether the plaintiffs were qualified for the job. Specifically, the parties dispute whether the plaintiffs met the IT position's educational requirement.

The Third Circuit Court of Appeals has "noted that if a plaintiff is not qualified for the job he seeks, we can reject a discrimination claim without the heavy lifting that is required if a *prima facie* case is made out." *Dorsey v. Pittsburgh Assocs.*, 90 F. App'x 636, 639 (3d Cir. 2004) (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 n.4 (3d Cir. 1999). "Objective job qualifications can be evaluated at the *prima facie* case phase while subjective qualities such as management or leadership skills should be evaluated during the pretext analysis, since 'subjective evaluations are more susceptible of abuse and more likely to mask pretext.'" *Galante v. Cox*, No. 05-6739, 2006 WL 3069461, at *6 (E.D. Pa. Oct. 25, 2006) (quoting *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 938–39 (3d Cir. 1997)). "If a plaintiff cannot show he is objectively qualified for the job, summary judgment is appropriate." *Id.* (citing *Perry v. Jackson Nat'l Life Ins. Co.*, 54 F. Supp. 2d 473, 477 (E.D. Pa. 1999)).

Here, Merck argues that it did not hire the plaintiffs solely because neither candidate was able to provide documentary proof that they met the objective educational requirements of the IT position. Whether the plaintiffs have met their burden to point to specific evidence that they did meet the job's objective education requirements is an analysis the Court must conduct during the consideration of the plaintiffs' *prima facie* case. *See Galante*, 2006 WL 3069461, at *7 ("Defendant argues that it did not hire Plaintiff for the positions in question because Plaintiff lacked necessary objective job qualifications. These qualifications are appropriately evaluated during the Plaintiff's *prima facie* case because only objective job requirements, not subjective traits, are at issue.").

Merck's IT job posting listed three different ways an applicant's education could satisfy the educational requirements and qualify them for the position:

1. Completion of an electronic and instrumentation course (2 years minimum) from a recognized technical institute with subjects covering electronic and instrument control systems and component maintenance (the "Trade School Condition");

2. Completion of a formal 5-year IT apprenticeship program, including work on electronic and instrument control systems and component maintenance (the "Formal Apprenticeship Condition"); or

3. Equivalent military training (the "Military Condition").

It is uncontested that neither plaintiff met the Military Condition. The parties dispute, however, whether the plaintiffs were qualified under the Trade School Condition or the Formal Apprenticeship Condition.

*1. The Trade School Condition*

Merck's IT job posting describes the Trade School Condition as requiring an applicant to be a "[g]raduate of an Electronics & Instrumentation course (2 years minimum), from a recognized technical institute with subjects covering electronic and instrument control systems, and component maintenance." Mot. at Ex. H. Merck will also consider a candidate to have met the Trade School Condition if the candidate (1) took and passed the NCCER test, and (2) completed the underlying coursework covered by the NCCER test. Cossel Dep. at 135:14–20.

First, the plaintiffs assert that they meet the Trade School Condition because they are both NCCER certified, and "Merck does not have any written policy or procedure that states that a candidate for the IT position can meet the Trade School Condition *only if* the candidate takes the NCCER courses in addition to passing the NCCER test." Opp'n to Mot. at 24. This argument is flawed. Merck's informal policy apparently is that it will consider a candidate to have met the Trade School Condition as long as the candidate (1) took and passed the NCCER test, *and* (2) completed the underlying coursework covered by the NCCER test. The plaintiffs seek to avail

themselves of half of this unwritten policy by forcing Merck to accept the NCCER test while dismissing the legitimacy of the underlying coursework requirement because it is an unwritten policy. The plaintiffs essentially argue that only the portion of Merck's informal policy that is favorable to them is binding on Merck while the other portion is somehow invalid. The Court need not accept such an argument where it is unsupported by the facts, law, or logic.

Mr. Floyd also appears to argue that his certification from a two-year program at Lyons Technical Institute, which he obtained for a different instrumentation position, qualifies him under the Trade School Condition. However, Mr. Floyd explicitly admitted that he is not a graduate of an electronics instrumentation course, which is a requirement of the Trade School Condition. Mot. at Ex. N ("It is admitted that Mr. Floyd was not a 'Graduate of an Electronics Instrumentation course.'"). He argues that even though his certification is not in electronics and instrumentation, it nonetheless gave him the education and training required to perform the IT position at issue. However, whether Mr. Floyd's experience is a proper substitute for the Trade School Condition is not for Mr. Floyd or the Court to determine. More to the point, Merck was not obliged to accept Mr. Floyd's interpretation of his own experience. *See Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003) ("[T]he actual qualifications of a position is not a matter that the courts should determine.").

Neither of the plaintiffs' qualifications meet the objective Trade School Condition.

*2. The Formal Apprenticeship Condition*

Merck's IT job posting describes the Formal Apprenticeship Condition as "[c]ompletion of a formal 5-year Instrument Technology apprentice program, including work on electronic and instrument control systems, and component maintenance." Mot. at Ex. H. Such a program refers to a "formal apprenticeship program which combines in classroom training with hands-on

experience," and "five years would indicate that it is a 10,000 hour program." Cossel Dep. 49:20–23. Completion of such a program does not come with a diploma; rather, "[i]f it is Department of Labor approved, then [the apprentice] would be issued a card stating that [he] completed the apprenticeship program." *Id.* at 50:17–20. "In very rare instances companies offer apprenticeships that are not Department of Labor approved," and an applicant who completed such a program "would have to provide the documentation of their program." *Id.* at 50:21–24. Such documentation would include "a description of the program, what courses, and the length of time they were offered, along with generally there is assessments of the different skills along the way." *Id.* at 51:10–13. This documentation is only required if the apprenticeship program is not approved by the Department of Labor. *Id.* at 51:16–17.

Both plaintiffs argue that they meet the Formal Apprenticeship Condition because they completed a five-year IT apprenticeship program offered by their former employer, the Philadelphia Water Department. Neither plaintiff has any documentation related to participation in or the existence of a Water Department IT apprenticeship program. The plaintiffs argue that this lack of documentation is irrelevant because Merck's job description does not state what, if any, documentation is required.

Merck asserts that because neither plaintiff was able to provide proof of completion of a five-year IT apprenticeship program, Merck was forced to conclude that they were not qualified for the position. Merck also directs the Court to the declaration of Gerald Leatherman, the current deputy water commissioner, in which Mr. Leatherman states that no documents related to the plaintiffs in the Water Company's possession, custody, or control confirm either the existence of a five-year formal IT apprenticeship program or the plaintiffs' completion of such a program. Merck asserts that without any documentation to support the plaintiffs' assertions that

they completed a five-year IT apprenticeship program, the plaintiffs are unable to raise a factual dispute as to whether they were qualified for the IT position.

The plaintiffs argue that despite this lack of documentation, Merck cleared Mr. Rosanova's credentials before interviewing him, in effect determining that he was nonetheless qualified for the position.[5] They also assert that even if they did not meet the objective qualifications of Merck's IT job posting, Merck has since hired ITs who also did not meet the position's objective qualifications, a matter alluded to below.

### 3. Whether Merck Determined the Plaintiffs Were Qualified

The plaintiffs argue that even if they did not meet the IT job posting's objective requirements, Merck concluded internally that they were nonetheless qualified for the IT position. The plaintiffs have identified a variety of evidence that they argue demonstrates that Merck did make such a determination, including but not limited to:

- Ms. Schurr's email prior to Mr. Rosanova's interview that Ms. Cossel had just cleared Mr. Rosanova's credentials;

- Ms. Schurr's internal request at Merck following Mr. Rosanova's interview to process an external offer as soon as possible;

- Ms. Schurr approving an offer for Mr. Rosanova, although Ms. Schurr does not know if anyone approved the offer after she sent it up the chain of command;

- An email from Ms. Miller to Ms. Cossel and Ms. Schurr attaching a document that she said equates Mr. Rosanova's NCCER training documentation to the Department of Labor requirements for completing the apprenticeship program; and

- An email from Ms. Miller months after Merck terminated Mr. Rosanova's candidacy in which she recommended hiring Mr. Rosanova based on his NCCER certification.

This evidence is enough to create a dispute of material fact related to whether Merck determined that Mr. Rosanova's credentials, albeit not clearly the objective credentials required in

---

[5] Because Mr. Floyd's credentials were essentially identical, a determination that Mr. Rosanova was qualified could constitute evidence that Mr. Floyd was likewise qualified.

the IT job posting, nonetheless qualified him for the IT position. As noted, many of Mr. Floyd's credentials overlapped with Mr. Rosanova's, creating a dispute of material fact as to whether Mr. Floyd was nonetheless qualified as well. Therefore, Merck is not entitled to summary judgment on the ground that the plaintiffs were not objectively qualified for the IT position.

### 4. Whether Merck Hired Other Unqualified ITs

The plaintiffs argue that even if Merck did not determine that the plaintiffs' credentials qualified them for the IT position, Merck has since hired ITs who also did not meet the IT position's objective qualifications, destroying Merck's ability to rely on those objective qualifications in arguing that the plaintiffs were unqualified. Merck responds that it alone has discretion how to interpret and apply the IT job description and its educational requirements. Merck argues that other employees' qualifications are irrelevant to the question of the plaintiffs' qualifications, and the plaintiffs' attempt to raise a triable issue of fact fails.

However, if an employer departs "from a job posting's objective criteria in making an employment decision, an employer establishes different qualifications against which an employee or applicant should be measured for the position." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 540 (3d Cir. 2006). Therefore, if Merck hired ITs who did not meet the job posting's objective qualifications, then Merck "cannot rely on those objective job qualifications to defeat a plaintiff's prima facie case; instead, the qualifications possessed by the individual who was hired become the applicable objective standards." *Geisel v. Primary Health Network*, No. 07-1548, 2010 WL 3719094, at *6 (W.D. Pa. Sept. 17, 2010) (citing *Scheidemantle*, 470 F.3d at 541).

Here, Merck claims that the seven comparators the plaintiffs identified in their complaint all met the IT position's educational requirements. The plaintiffs, however, argue that the evidence

shows that some of the comparators did not meet any of the three educational requirements for the IT position.[6] The parties' respective contentions are listed for each comparator below:

| Comparator | Merck's Arguments | The Plaintiffs' Response |
|---|---|---|
| William Clay | Mr. Clay completed the Instrumentation Class A School with the Department of the Navy, meeting the educational requirement by satisfying the Military Condition. | Merck did not produce Mr. Clay's Class A Instrumentation School curriculum, military course transcript, or any other documents that establish that Mr. Clay's Class "A" Instrumentation School course is equivalent to a two-year minimum Electronics and Instrumentation course. |
| James Walsh | Mr. Walsh attended the Keesler Air Force Base Naval Training Center and attended their Calibration and Maintenance School, meeting the educational requirement by satisfying the Military Condition. | The Calibration and Maintenance School (Navy course C-198-6671) is not equivalent training. First, calibration is not the same as instrumentation. Second, the ACE Credit Recommendation for the GPETE Calibration and Maintenance School is four semester hours, which is not equivalent to a two-year minimum Electronics and Instrumentation course. |
| John Gallagher | Mr. Gallagher attended the Keesler Air Force Base Naval Training Centers with a Certificate of Completion for the GPETE Calibration and Maintenance School, meeting the educational requirement by satisfying the Military Condition. | The GPETE Calibration and Maintenance School (Navy course C-198-6671) is not equivalent training. First, calibration is not the same as instrumentation. Second, the ACE Credit Recommendation for the GPETE Calibration and Maintenance School is four semester hours, which is not equivalent to a two-year minimum Electronics and Instrumentation course. |

---

[6]    The plaintiffs also argue that there are additional comparators beyond those identified in the complaint who did not meet the IT position's educational requirements. In support, the plaintiffs dedicate nearly 300 paragraphs of their statement of material facts that preclude summary judgment to discussing each of Merck's IT's credentials and explaining how numerous ITs fail to meet the same educational requirements that Merck required of the plaintiffs. However, the Court need not reach the issue of these additional IT employees to determine if there is a material dispute of fact regarding whether the plaintiffs were qualified.

| | | |
|---|---|---|
| Oscar Gonzalez | Mr. Gonzalez provided Merck with copies of the certificate of completion of a formal, five-year apprenticeship program, meeting the educational requirement by satisfying the Formal Apprenticeship Condition. | Undisputed. |
| Thomas Wade | Mr. Wade is a graduate of RETS Electronic School with an associate's degree in applied technology, and Mr. Wade submitted a copy of the certificate of completion of a formal, five-year apprenticeship program, meeting the educational requirement by satisfying the Formal Apprenticeship Condition. | Merck's job description requires a two-year minimum Electronics and Instrumentation course from a recognized technical institute with subjects covering electronic and instrument control systems and component maintenance, not in applied technology. Mr. Wade completed an apprenticeship as an electrician, not as an IT as required by the posting. |
| Tan Nguyen | Mr. Nguyen provided Merck with copies of the certificate of completion of a formal, five-year apprenticeship program, meeting the educational requirement by satisfying the Formal Apprenticeship Condition. | Undisputed. |
| Zachary Conner | Mr. Conner completed the General Purpose Electronic Test Equipment Calibration and Maintenance Course, along with the Intermediate Level Calibration of Physical/Dimensional Test and Measuring Systems, meeting the educational requirement by satisfying the Military Condition. | The General Purpose Electronic Test Equipment Calibration and Maintenance course and the Intermediate Level Calibration of Physical/Dimensional Test and Measuring Systems course is not equivalent training. The ACE Credit Recommendation for these courses totals 11 semester hours, which is not equivalent to a two-year minimum Electronics and Instrumentation course. |

Merck argues that "[w]hat the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 765 (7th Cir. 2001). Although "the actual qualifications of a position is not a matter that the courts should determine," *Longstreet*, 67 F. App'x at 126, courts have a responsibility to enforce the requirement that "employers apply the same standards for hiring . . .

protected minorities that they apply to all other applicants," *Scheidemantle*, 470 F.3d at 541. Otherwise "an employer could, with impunity, appeal to objective qualifications to defeat any [minority] job applicant's challenge to its hire of an objectively unqualified [non-minority] in her place," reducing discrimination law "to bark with no bite." *Id.*

Here, the plaintiffs have identified evidence in the record that raises a dispute of material fact as to whether some of the comparators that Merck hired met the IT position's objective educational requirements. If Merck hired ITs who did not meet the educational requirements, then Merck could not rely on those requirements to justify its rejection of the plaintiffs. With this dispute of material fact, Merck is not entitled to summary judgment on the ground that the plaintiffs failed to meet the IT position's objective educational requirements. *See Scheidemantle*, 470 F.3d at 536 ("We must decide whether an employer that hires someone who lacks a job posting's objective qualifications can point to the absence of those same qualifications in another applicant as a basis for declining to hire that second applicant. We hold that it cannot, and in so doing conclude that [the plaintiff] established a *prima facie* case of discrimination."). Therefore, the Court turns to the remainder of the plaintiffs' *prima facie* case.

## C. Whether Merck Hired Sufficiently Younger ITs Compared to the Plaintiffs

It is undisputed that the plaintiffs were not hired as ITs. Therefore, the analysis turns to the fourth element of the plaintiffs' *prima facie* case: whether Merck ultimately filled the position with someone sufficiently younger than the plaintiffs or continued to seek applicants from among those having the plaintiffs' qualifications.

Merck argues that it has hired multiple ITs in their 50s since the plaintiffs applied, including two employees who were only three and four years younger than the plaintiffs. Merck asserts that the plaintiffs' *prima facie* case fails because these employees cannot be considered "sufficiently younger" than the plaintiffs.

18

The plaintiffs respond that all of the ITs hired since they were not offered the position are sufficiently younger than the plaintiffs. *See Von Rudenborg v. Di Giorgio Corp.*, No. 08-5791, 2011 WL 4594220, at *5 (D.N.J. Sept. 30, 2011) (finding a three-year age gap sufficient to serve as the premise of an inference of age discrimination). They also argue that even if not every IT is sufficiently younger individually, precedent supports the Court looking at the average age difference or combined age differences between the plaintiffs and all the ITs Merck hired since their applications. *See Steward v. Sears Roebuck & Co.*, 231 F. App'x 201 (3d Cir. 2007) (declining "to adopt a brightline rule that a 6.75 year *average* age difference between a plaintiff and those who assume his job duties is, as a matter of law, insufficient to give rise to an inference of age discrimination") (emphasis added); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 730 (3d Cir. 1995) (finding "[t]he *combined* differences in age" between the plaintiff and two employees "clearly sufficient to satisfy the fourth prong of a prima facie case by raising an inference of age discrimination") (emphasis added).

Here, after Merck rejected the plaintiffs for the IT position, it hired ITs in 2017 who were dispersed essentially evenly at ages between 55 and 34. In 2018, Merck hired ITs who likewise were between age 56 and 26. And in 2019, Merck's IT hires were ages 51, 44, 40, and 26. Although six of the individuals hired after the plaintiffs were not were in their 50s, two of them being only three and four years younger than the plaintiffs, the others are ten, twenty, or thirty years younger than the plaintiffs. To satisfy the "sufficiently younger" standard, the Third Circuit Court of Appeals has "noted that there is no 'particular age difference that must be shown,' but while '[d]ifferent courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot.'" *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999) (alterations in original) (quoting *Sempier*, 45 F.3d at 729); *see also Carter v. Mid-Atl. Healthcare,*

*LLC*, 228 F. Supp. 3d 495, 504 (E.D. Pa. 2017) ("[T]he Third Circuit has recognized that an age differential of five years 'can' be sufficient, but has not specifically held that a five-year differential must be established in order for a replacement to be considered 'sufficiently younger' as a matter of law."). "Moreover, the United States Supreme Court has recognized that a 'prima facie case operates as a flexible evidentiary standard' and was 'never intended to be rigid, mechanized, or ritualistic.'" *Carter*, 228 F. Supp. 3d at 504 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Viewing the evidence here in the light most favorable to Messrs. Rosanova and Floyd and drawing all reasonable inferences in their favor, the Court concludes that the age differences presented could raise an inference of age discrimination. *See id.* ("In light of the unsettled precedent with respect to the 'sufficiently younger' element, the lack of clear guidance from the Third Circuit, the Supreme Court's directive that a prima facie case be viewed flexibly, and because I must view the evidence in the light most favorable to Plaintiff, and draw all reasonable inferences her in favor, I conclude that summary judgment would be premature based solely on Plaintiff's age differential with her replacement. Accordingly, Plaintiff has met her burden in establishing a prima facie claim of age discrimination under the ADEA."). Therefore, the plaintiffs have made a showing of their *prima facie* case.

## II. Merck's Legitimate Nondiscriminatory Reasons

The burden now shifts to Merck to articulate legitimate, nondiscriminatory reasons for not hiring the plaintiffs. This burden is "relatively light." *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 937 (3d Cir. 2009).

Merck claims that it did not hire the plaintiffs because they failed to provide any documentation that they had completed a five-year formal apprenticeship program that fulfilled

the requirements of the Formal Apprenticeship Condition. Even if the plaintiffs were qualified, their inability to provide documentation would support Merck's contention that its reason for failing to hire the plaintiffs was legitimate and nondiscriminatory. Merck has met its light burden, and the burden now shifts back to the plaintiffs to provide evidence that Merck's proffered reason was pretext for discrimination.

## III. Whether the Plaintiffs Can Establish Pretext

A plaintiff can establish pretext by either "(i) discrediting the [defendant's] proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (citations and quotations omitted).

Here, the Court's pretext analysis overlaps substantially with its analysis of the plaintiffs' *prima facie* case. *See Doe v. C.A.R.S. Prot. Plus, Inc.,* 527 F.3d 358, 370 (3d Cir. 2008) ("[E]vidence supporting the *prima facie* case is often helpful in the pretext stage . . . ."); *Fuentes,* 32 F.3d at 764 ("[I]f the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.") (citations omitted).

The plaintiffs offer the following arguments and evidence to support a finding that Merck's reasons for not hiring the plaintiffs were pretext for age discrimination:

1. Merck does not have documentation related to the educational credentials for 62 of its 86 IT employees, casting doubt over the legitimacy of Merck's complaints regarding the plaintiffs' lack of proof of their IT apprenticeships;

2. Merck routinely hires candidates who do not meet any of the three educational requirement conditions;

3. Mr. Schone, the alleged decision-maker, has deposition testimony that calls his credibility into question; and

4. Merck attempted to hide the ultimate decision-maker, and Merck employees have made contradicting statements about who made the final decisions to not hire the plaintiffs.

Merck responds that whether Merck retained documentation of the educational credentials for all of its ITs, some of whom were hired in the 1980s and 1990s, is immaterial to whether the plaintiffs were discriminated against on the basis of their age. Merck also notes that the educational requirement was not always required, and it is undisputed that Merck produced educational credentials for all of the ITs it hired since the plaintiffs applied in 2017. Furthermore, Merck asserts that the plaintiffs' determinations that some of these ITs' credentials do not meet the IT position's educational requirements are mere unsupported speculations. Finally, Merck claims that the plaintiffs have only shown that, at most, Mr. Schone was mistaken during a portion of his deposition testimony, and Merck disclosed as early as July 1, 2019 that Mr. Schone was involved in Merck's decisions to not hire the plaintiffs.

The Third Circuit Court of Appeals has explained that, to survive a summary judgment motion, a plaintiff need only present evidence from which "a factfinder *could* reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (emphasis added) (quoting *Fuentes*, 32 F.3d at 764). Here, although some of the plaintiffs' arguments and evidence item by item individually may suffer from various weaknesses, the Court finds that they have met

their burden to identify a body of evidence from which a factfinder could determine Merck's reasons for not hiring them were pretextual. Most persuasive is the plaintiffs' evidence related to Merck's willingness to hire other ITs who did not meet the educational requirements. Although it is not entirely clear from this evidence that these ITs did not meet the educational requirements, as explained in the Court's analysis of the plaintiffs' *prima facie* case, there is enough evidence to raise a dispute of material fact as to whether Merck departed from its educational requirements in hiring some of the younger ITs after it rejected the plaintiffs. This same evidence that Merck departed from its educational requirements could lead a factfinder to conclude that Merck's proffered reason for not hiring the plaintiffs was pretextual.

The summary judgment standard, in which the evidence is to be interpreted in the light most favorable to the plaintiff, is "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997). Here, when the evidence is viewed in the light most favorable to the plaintiffs, a jury could reasonably find that Merck's reasons for not hiring the plaintiffs were pretext for age discrimination.

## CONCLUSION

For the foregoing reasons, Merck's motion for summary judgment is denied. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE